Opinion
 

 VOGEL (C. S.), P. J.
 

 Introduction
 

 This case presents a question of the damages recoverable when an insurer breached its duty to defend the insured but ultimately prevailed on the issue of coverage. Because he had no funds to obtain other counsel to defend the underlying lawsuit following the insurer’s refusal to defend, the insured
 
 *829
 
 suffered a default judgment against him. In the subsequent lawsuit against the insurer upon the underlying judgment and for breach of the duty to defend, the insurer prevailed on the coverage issue but was found to have wrongfully refused to defend. Upon those findings the trial court initially granted judgment for the insured in the amount of the underlying default judgment. On a prior appeal from that judgment,
 
 Amato
 
 v.
 
 Mercury Casualty Co.
 
 (1993) 18 Cal.App.4th 1784 [23 Cal.Rptr.2d 73]
 
 (Amato I),
 
 we held that because the insurer had ultimately prevailed on the coverage issue, the measure of the insured’s damages was not the full amount of the underlying judgment but rather the insured’s costs of defense. Then upon remand the trial court ruled that, since it was stipulated the insured incurred no costs of defense because the matter went by default, the insured suffered no compensable damages. The trial court therefore rendered a judgment for the insurer, from which the insured now appeals.
 

 In light of more recent authority and the clarification of the record that the underlying judgment was by default, we reconsider
 
 Amato I
 
 and conclude the trial court was correct the first time in entering judgment for the amount of the underlying default judgment. We hold that where an insurer tortiously breaches the duty to defend and the insured suffers a default judgment because the insured is unable to defend, the insurer is liable for the default judgment, which is a proximate result of its wrongful refusal to defend. We also conclude the insured is not required, in these circumstances, to conduct a “trial [of the underlying case] within a trial,” in order to recover the amount of the default judgment from the insurer who wrongfully refused to defend.
 

 Factual and Procedural Background
 

 The facts may be summarized primarily from the opinion in
 
 Amato I.
 
 Defendant Mercury Casualty Company (Mercury) issued an automobile policy on a Renault automobile. The policy defined “insured” to include permissive users and resident relatives of permissive users, including relatives by marriage. While driving the Renault, plaintiff Anthony Charles Amato (Amato), a permissive user, negligently caused an accident which injured his passenger, Jacqueline Sutton (Sutton), who was his mother-in-law. When Sutton sued Amato, Amato tendered the defense to Mercury. Mercury refused to defend, contending there was no coverage, based on a policy provision excluding liability for injuries caused to resident relatives of the insured. At the time Mercury refused to defend, Mercury had information which, if true, indicated that at the time of the accident Amato and Sutton did
 
 not
 
 live at the same residence. Mercury also refused Sutton’s offer to settle for the policy limit of $15,000.
 

 
 *830
 
 Following Mercury’s refusal to defend, Amato could not afford to hire other counsel to defend him. Sutton obtained a judgment by default against Amato for $165,750 plus costs of $156.
 

 Amato brought the present action against Mercury for breach of the covenant of good faith and fair dealing, and Sutton sued Mercury on her judgment against Amato. A jury found by special verdict that Sutton
 
 did
 
 reside with Amato at the time of the accident. Thus the injury to Sutton was in fact not covered by the policy, and Sutton took nothing by her complaint against Mercury. But the trial court found Mercury breached its duty to defend, because there were facts known to Mercury at the time of its refusal which gave rise to the potential of liability under the policy. Based on this finding the trial court originally gave judgment for Amato against Mercury in the full amount of the underlying judgment by Sutton against Amato, plus costs and interest. Amato waived any other compensatory damages.
 

 On Mercury’s appeal from that judgment, this court affirmed as to Mercury’s liability but reversed and remanded as to damages.
 
 (Amato I, supra,
 
 18 Cal.App.4th 1784.) We held that because Mercury was aware, at the time of its refusal, of facts which if true indicated Amato was not residing with Sutton, the record supported the trial court’s conclusion that Mercury’s refusal to defend breached its covenant of good faith and fair dealing.
 
 (Id.
 
 at pp. 1789-1793.) Although the jury subsequently agreed with Mercury as to the facts determinative of coverage, those facts were disputed at the time of the refusal to defend, and Mercury therefore owed a duty to defend.
 
 (Id.
 
 at pp. 1791-1792.)
 

 On the other hand, we held that because it was ultimately determined there was no coverage, the trial court erred in awarding a judgment equal to the underlying judgment obtained against Amato. We cited
 
 Hogan
 
 v.
 
 Midland National Ins. Co.
 
 (1970) 3 Cal.3d 553 [91 Cal.Rptr. 153, 476 P.2d 825], for the proposition that an insurer who breached only its duty to defend is not liable for the judgment against the insured but is liable for all costs and attorney fees expended by the insured in defending the underlying action.
 
 (Amato I, supra,
 
 18 Cal.App.4th at pp. 1793-1794.) We said that because the jury found facts showing there was no coverage, “. . . the proper measure of damages is that amount which will compensate the insured for the harm or loss caused by the breach of the duty to defend, i.e., the cost incurred in defense of the underlying suit. [^Q It is not clear from the record before us whether Amato mounted a defense in the underlying action. The parties stipulated that the judgment was entered against him after the taking of evidence, but Amato alleged that it was a ‘Judgment by Court After Default.’ Therefore, remand is necessary to ascertain the amount of damages, if any, properly awardable."
 
 (Id.
 
 at p. 1794.)
 

 
 *831
 
 On remand, Amato stipulated that since the matter went by default, he had “no cost of defense.” The trial court felt compelled by
 
 Amato I
 
 to conclude Amato’s only recoverable damages were the costs of defending the underlying suit. Because Amato stipulated he had no such costs, the court found Amato suffered no compensable damages, and therefore the court awarded judgment to Mercury. Amato appeals from this judgment.
 

 Discussion
 

 Breach of an insurer’s duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing, for which tort remedies are appropriate.
 
 (Campbell
 
 v.
 
 Superior Court
 
 (1996) 44 Cal.App.4th 1308, 1320 [52 Cal.Rptr.2d 385].) Contractual damages are “the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.” (Civ. Code, § 3300; 2 Cal. Liability Insurance Practice (Cont.Ed.Bar 1996) § 24.57, p. 24-45; Croskey et al., Cal. Practice Guide: Insurance Litigation 3 (The Rutter Group 1995) ¶12:641, p. 12B-101 (hereafter Insurance Litigation).) Tort damages are “the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.” (Civ. Code, § 3333; 2 Cal. Liability Insurance Practice,
 
 supra,
 
 § 24.68, p. 24-50.) Here, the trial court’s prior judgment determined that Mercury had no good cause to refuse to defend, and Mercury therefore tortiously breached the covenant of good faith and fair dealing.
 

 Where an insured mounts a defense at the insured’s own expense following the insurer’s refusal to defend, the usual contract damages are the costs of the defense. (2 Cal. Liability Insurance Practice,
 
 supra,
 
 § 25.29, p. 25-16; Insurance Litigation,
 
 supra,
 
 ¶ 12:651, p. 12B-102.)
 

 Here, the insured did not mount a defense to the underlying action at Ms own expense because he was financially unable to do so. As a result of Mercury’s wrongful refusal to defend, Amato was unable to defend at all, and suffered a default judgment of $165,000. Not until Sutton’s subsequent action on that judgment was it determined that there was in fact no coverage. We hold in these circumstances Mercury is liable for the judgment, which is a proximate result of its wrongful refusal to defend. We need not discuss other consequential damages (see
 
 Campbell
 
 v.
 
 Superior Court, supra,
 
 44 Cal.App.4th 1308, 1320), because at the conclusion of the first trial Amato waived such damages, apparently satisfied to be awarded the amount of the judgment.
 

 We begin by pointing out the importance of the duty which Mercury tortiously breached. “[T]he insurer must defend in some lawsuits where
 
 *832
 
 liability under the policy ultimately fails to materialize; this is one reason why it is often said that the duty to defend is broader than the duty to indemnify.”
 
 (Montrose Chemical Corp.
 
 v.
 
 Superior Court
 
 (1993) 6 Cal.4th 287, 299 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) The duty to defend is a continuing one which arises on tender of the defense and lasts either until the conclusion of the underlying lawsuit or until the insurer can establish
 
 conclusively
 
 that there is no potential for coverage and therefore no duty to defend.
 
 (Id.
 
 at p. 295.) The obligation of the insurer to defend is of vital importance to the insured. “In purchasing his insurance the insured would reasonably expect that he would stand a better chance of vindication if supported by the resources and expertise of his insurer than if compelled to handle and finance the presentation of his case. He would, moreover, expect to be able to avoid the time, uncertainty and capital outlay in finding and retaining an attorney of his own.”
 
 (Gray
 
 v.
 
 Zurich Insurance Co.
 
 (1966) 65 Cal.2d 263, 278 [54 Cal.Rptr. 104, 419 P.2d 168].) “The insured’s desire to secure the right to call on the insurer’s superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability.”
 
 (Montrose Chemical Corp.
 
 v.
 
 Superior Court, supra,
 
 6 Cal.4th at pp. 295-296.)
 

 Support for our conclusion that Mercury is liable for the judgment can be found in
 
 Mullen
 
 v.
 
 Glens Falls Ins. Co.
 
 (1977) 73 Cal.App.3d 163 [140 Cal.Rptr. 605] and commentary on that case in the practice guide, Insurance Litigation,
 
 supra,
 
 at paragraphs 12:671 to 12:673. In
 
 Mullen
 
 the insurer refused to defend or indemnify, contending the underlying action was based on an intentional assault which was excluded from coverage. The refusal to defend was wrongful because, at the time of the refusal, there was a potential for liability. The insured hired another attorney (thus, unlike the present matter,
 
 Mullen
 
 was not a default case); the verdict against the insured in the underlying case was based on intentional assault, thus the insurer was ultimately vindicated in its belief of noncoverage. The court held the insured was entitled to seek not only his costs of defense but also the amount of the underlying judgment. (73 Cal.App.3d at pp. 173-174.) The court posed the question, “[M]ay an insurance company, without making an investigation of any kind, deny an insured a defense at a time when it has reason to believe that there is a potential liability under the insurance policy,
 
 and then rely upon the results of the personal injury lawsuit and subsequent factors to prove that there was in reality no potential liability in the first instance ?”
 
 The court answered, “We believe that public policy alone mandates a negative answer . . . ; otherwise an insurance carrier could refuse to defend its insured on the slightest provocation
 
 and then resort to hindsight for the
 
 justification.”
 
 (Id.
 
 at p. 173, italics added.) The court remanded for a determination of
 
 *833
 
 damages “including the amount of the [underlying] judgment.”
 
 (Id.
 
 at p. 174.) The practice guide’s comment on
 
 Mullen
 
 presages the present case. It states, “Arguably,
 
 Mullen,
 
 supra, goes too far in penalizing the insurer for refusal to defend. The insured is entitled to its
 
 defense costs
 
 in such a case [citing
 
 Amato
 
 I]. But since there was in fact no coverage (no duty to indemnify) why should the insurer have to pay the judgment?
 
 (The result might be different if the insurer’s refusal to investigate and defend caused the judgment, as where the judgment went by default; but that was not the case in Mullen.)”
 
 (Insurance Litigation,
 
 supra,
 
 ¶ 12:673, p. 12B-108, some italics inside parentheses added.)
 

 We agree with the above reasoning that where the insurer tortiously refuses to defend and as a consequence the insured suffers a default judgment, the insurer is liable on the judgment and cannot rely on hindsight that a subsequent lawsuit establishes noncoverage. This result is also supported by other authorities. In
 
 Gray
 
 v.
 
 Zurich Insurance Co., supra,
 
 65 Cal.2d 263, 279-280, the insurer who refused to defend argued that although it was required to reimburse the insured’s costs of defense, it should not be required to pay the ensuing judgment, because apparently that judgment did not show whether it was based on a theory within coverage or not within coverage. The Supreme Court rejected that argument and concluded the insurer was liable for the amount of the underlying judgment regardless of the ambiguity, under the “general rule that an insurer that wrongfully refuses to defend is liable on the judgment against the insured.”
 
 Gray
 
 was reviewed in a law review case note cited in
 
 Kapelus
 
 v.
 
 United Title Guaranty Co.
 
 (1971) 15 Cal.App.3d 648, 653 [93 Cal.Rptr. 278], for the proposition that, “An insurer’s wrongful refusal to defend will automatically subject it to liability for both the costs of defense and any adverse judgment the insured suffers, even when the judgment was rendered on a theory not within the policy coverage.”
 
 Gray
 
 was similarly interpreted by an Annotation (1983) 20 A.L.R.4th 23, 30, which states, “An insurer that fails or refuses to defend a third-party action against its insured, on the ground that the claim involved in the action is not covered by the policy, may be held liable for an excess judgment because of its refusal—even though, had it defended the third-party action, it might have escaped liability for the resulting judgment. . . . [To avoid this dilemma the insurer] can obtain a declaratory judgment determining whether there is coverage ... or it can defend under a reservation of rights and thereby preserve its right to dispute liability for the third-party judgment.”
 

 In
 
 State Farm Mut. Auto. Ins. Co.
 
 v.
 
 Allstate Ins. Co.
 
 (1970) 9 Cal.App.3d 508, 528-531 [88 Cal.Rptr. 246], the court held that one insurer’s refusal to defend, in conjunction with the other insurer’s rejection of a reasonable
 
 *834
 
 settlement offer, subjected the insurer to liability for the judgment against the insured even in excess of the policy limit. The court mentioned that a verdict against the insured is an “expectable result” of an insurer’s breach of the duty to defend.
 
 (Id.
 
 at p. 531.) This is a corollary of the proposition in
 
 Comunale
 
 v.
 
 Traders & General Ins. Co.
 
 (1958) 50 Cal.2d 654, 659-660 [328 P.2d 198], that “. . . if the insured
 
 has
 
 employed competent counsel to represent him, there is no ground for concluding that the judgment would have been for a lesser sum had the defense been conducted by the insurer’s counsel, and therefore it cannot be said that the detriment suffered by the insured as the result of a judgment in excess of the policy limits was proximately caused by the insurer’s refusal to defend.” (Italics added.) When the insurer refuses to defend and the insured does
 
 not
 
 employ counsel and presents
 
 no
 
 defense, it
 
 can
 
 be said the ensuing default judgment is proximately caused by the insurer’s breach of the duty to defend.
 

 In
 
 Amato I
 
 we reversed the trial court on the ground the proper measure of damages was not the amount of the underlying judgment but the costs of defense. We cited
 
 Hogan
 
 v.
 
 Midland National Ins. Co., supra,
 
 3 Cal.3d 553. There, the insurer refused to defend; the insured defended at its own expense and suffered an adverse judgment. The underlying judgment did not determine the issue of coverage. On appeal the Supreme Court held the judgment was severable; some of the claims were covered and some were not. The result was that the insurer was liable for all the costs of defense but only that part of the underlying judgment which represented covered claims.
 

 We no longer believe
 
 Hogan
 
 controls this case, primarily because of the unusual factor of the default. We noted in
 
 Amato I
 
 that the record of the trial proceedings was very sparse and vague, and we could not be certain whether the underlying judgment was a default. (18 Cal.App.4th at p. 1788, fn. 1.) The subsequent proceedings on remand now establish clearly that the underlying judgment was suffered by default. In addition, significant new case law has been made after
 
 Amato I.
 
 Our own decision in
 
 Campbell
 
 v.
 
 Superior Court, supra,
 
 44 Cal.App.4th 1308, clarifies that an insurer who wrongfully refuses to defend may tortiously breach the covenant of good faith and fair dealing and should be liable for consequential damages; we even posed an example that contract damages would be inadequate for an insured who was financially unable to mount a defense at the insured’s own expense.
 
 (Id.
 
 at p. 1320 [“And lastly, there is the insured who is financially incapable of mounting its own defense. Assuming that insured is able ultimately to successfully sue the insurer, contract damages would not even begin to compensate for the financial and emotional losses sustained prior to obtaining such a judgment.”].)
 
 Montrose Chemical Corp.
 
 v.
 
 Superior Court, supra,
 
 6 Cal.4th 287, decided shortly after
 
 Amato I,
 
 clarifies that where there is any
 
 *835
 
 issue of a potential for coverage and therefore a duty to defend, the insurer must defend until it can secure an adjudication that there is no such potential or duty. Reexamining the present issue with the benefit of a clarified record and subsequent case law, we now believe the trial court was correct in its initial judgment that Mercury is liable for the default judgment, which constitutes the detriment to Amato proximately caused by Mercury’s tortious breach of the duty to defend. It suffices to say that, “ ‘ “The matter does not appear to [us] now as it appears to have appeared to [us] then.” ’ ”
 
 (Smith
 
 v.
 
 Anderson
 
 (1967) 67 Cal.2d 635, 646 [63 Cal.Rptr. 391, 433 P.2d 183] (cone, opn. of Mosk, J.), quoting
 
 Andrews
 
 v.
 
 Styrap
 
 (Eng.) 26 L.T.N.S. 704, 706.) The doctrine of law of the case is a discretionary policy which should not be followed if it results in a manifestly unjust decision. In looking to a just determination of the rights of the parties, an appellate court is not precluded from reconsidering questions decided on a former appeal.
 
 (England
 
 v.
 
 Hospital of Good Samaritan
 
 (1939) 14 Cal.2d 791, 795 [97 P.2d 813].)
 

 In its petition for rehearing Mercury contends that Amato is not entitled to the full amount of the underlying judgment. Mercury contends that instead Amato must conduct a “trial within a trial,” that is, Amato must in the present action try the underlying personal injury action and prove that if Mercury had defended him, the amount of the underlying judgment would have been smaller; and, Mercury argues, Amato is entitled only to the difference. Mercury asserts that the present case is governed by the “trial within a trial” theory of damages applicable to attorney malpractice actions, relying on
 
 Travelers Ins. Co.
 
 v.
 
 Lesher
 
 (1986) 187 Cal.App.3d 169 [231 Cal.Rptr. 791], Mercury’s reliance on
 
 Lesher
 
 and the theory of damages applicable to attorney malpractice actions is misplaced.
 
 [1]
 

 
 *836
 

 Lesher
 
 involved an action for negligence and tortious breach of contract filed by an insured against Travelers. The insured (Lesher) gave Travelers notice that it had been sued for private antitrust violations. Travelers provided a defense for its insured under a reservation of rights. Travelers filed a declaratory relief action to establish that it had no duty to defend or indemnify. A summary adjudication determined Travelers had no duty to defend or indemnify, but a trial was ordered to determine Travelers’ entitlement to fees and costs. The insured filed a cross-complaint in that ancillary proceeding for tortious breach of contract and negligence. The insured contended that, once having undertaken the defense of the antitrust actions, Travelers had a duty to conduct the defense with due care. (187 Cal.App.3d at p. 187.) Travelers breached that duty, the insured contended, by inadvertently disclosing to the adversary a potential witness, by creating a conflict of interest which caused an attorney to withdraw, and by providing a new attorney who was not adequately prepared for trial of one of the antitrust actions, the Worrell action. The insured contended Travelers’ conduct forced the insured to settle the Worrell action for $1.2 million, which the insured might have won.
 
 (Id.
 
 at pp. 195-196.) In essence, the insured’s action against Travelers was based on professional negligence, i.e., Travelers’ negligent conduct of the defense of the Worrell action which Travelers undertook.
 
 (Id.
 
 at p. 187.)
 

 The insured obtained a jury verdict of $1.5 million against Travelers. The appellate court held substantial evidence supported the jury’s implied finding that Travelers’ conduct adversely affected Lesher’s preparedness to defend the Worrell action. (187 Cal.App.3d at pp. 195-196.)
 

 Apposite to the present matter, the
 
 Lesher
 
 court considered the issue of whether the insured had carried his burden of proof to demonstrate that Travelers’ acts or omissions were the proximate cause of his damages. The court concluded that, “In our view, Lesher’s theory that he would have prevailed at trial in the underlying action if a proper defense had been provided [is] analogous to the theory of damage in an attorney malpractice case. The plaintiff in an action for attorney malpractice must first prove the attorney’s negligence, and then, to establish damages, must also prove that but for that negligence a better result could have been obtained in the underlying action. [Citations.] ‘An attorney malpractice action then, involves a suit within a suit, a reconsideration of the previous legal claim, and only by determining whether or not the original claim was good can proximate damages be determined.’ [Citation.] This trial within a trial avoids the specter that the damages claimed by a plaintiff are a matter of pure speculation and conjecture.” (187 Cal.App.3d at p. 197.) The court concluded that, “Given the similarity between attorney malpractice cases and Lesher’s
 
 *837
 
 unique theory of damages in this case, we conclude that he should have been required to try the underlying Worrell antitrust action within this bad faith action to sustain his claim that he would have successfully defended the Worrell action but for Travelers’ acts and omissions.”
 
 (Ibid.)
 
 However, the court also concluded that Travelers waived the point on appeal, because in the lower court Travelers objected to conducting a trial within a trial.
 
 (Id.
 
 at pp. 197-198.)
 

 In an extensive and scholarly opinion, Division Three of this court recently surveyed numerous reported cases and legal commentaries confirming that the “trial within a trial” formula is the applicable standard in a wide variety of professional malpractice cases.
 
 (Mattco Forge, Inc.
 
 v.
 
 Arthur Young & Co.
 
 (1997) 52 Cal.App.4th 820, 831-837 [60 Cal.Rptr.2d 780].) However, the exposition in
 
 Mattco Forge, Inc.
 
 v.
 
 Arthur Young & Co.,
 
 also demonstrates that the “trial within a trial” theory of damages is applicable only to claims predicated on professional negligence. The claims in
 
 Lesher
 
 were based upon negligent malpractice of a defense actually undertaken.
 
 (Travelers Ins. Co.
 
 v.
 
 Lesher, supra,
 
 187 Cal.App.3d at pp. 187, 196, 197.) The instant case is not. Because the present action is not predicated on negligence, it is not analogous to a professional malpractice action, and
 
 Lesher
 
 is not controlling.
 

 Here, the trial court’s earlier statement of decision found that Mercury “breached the implied covenant of good faith and fair dealing . . . implied by law in every insurance contract” based on documents and information in the possession of or available to Mercury, “which, if true, would render the ‘Residential Relative Exclusion’ inoperable and ineffective to preclude coverage for Amato under the policy.” We affirmed that decision in reliance on
 
 Gray
 
 v.
 
 Zurich Insurance Co., supra,
 
 65 Cal.2d 263, 277. The essence of the trial court’s decision and our affirmance as to liability in
 
 Amato I
 
 is that Mercury breached its implied covenant of good faith and fair dealing by failing to provide a defense.
 
 (Amato I, supra,
 
 18 Cal.App.4th at pp. 1790-1793.) In such circumstances, “[I]t is stated to be the general rule that ‘an insurer who has had an opportunity to defend is bound by the judgment against its insured as to all issues which were litigated in the action against the insured.’ ”
 
 (Clemmer
 
 v.
 
 Hartford Insurance Co.
 
 (1978) 22 Cal.3d 865, 884 [151 Cal.Rptr. 285, 587 P.2d 1098].)
 

 In
 
 Clemmer
 
 the insurer was bound by the award of damages obtained in a default judgment where there was ample evidence that the insurer had more than adequate notice of the pending action and failed to do anything to set aside the default. Similar results have been obtained where insurers have declined to defend and the insureds have disposed of third party claims by allowing judgment to be taken without opposition
 
 (Samson
 
 v.
 
 Transamerica
 
 
 *838
 

 Ins. Co.
 
 (1981) 30 Cal.3d 220, 236-242 [178 Cal.Rptr. 343, 636 P.2d 32]) or by way of settlement
 
 (Zander
 
 v.
 
 Texaco, Inc.
 
 (1968) 259 Cal.App.2d 793, 802 [66 Cal.Rptr. 561]).
 

 In
 
 Pruyn
 
 v.
 
 Agricultural Ins. Co.
 
 (1995) 36 Cal.App.4th 500 [42 Cal.Rptr.2d 295], a homeowner brought an action against the homeowners association for negligent damage to property. The association tendered the claim to its insurers, each of which denied coverage and refused to provide a defense. Thereafter, the homeowner and the association entered a negotiated settlement resulting in a stipulated judgment and an assignment of the association’s rights against its insurers in exchange for the homeowner’s covenant not to execute on the judgment against the association. The only actual judicial participation was a good faith determination pursuant to Code of Civil Procedure section 877.6.
 

 The homeowner then brought a direct action against the association’s insurers. The insurers, concerned about potential fraud or collusion, contended that the judgment was not the result of an “actual trial,” and therefore they were not bound by it. The
 
 Pruyn
 
 court observed that courts have reached differing results where third parties pursue direct actions against insurers based on judgments obtained by settlement, stipulation, or default.
 

 The
 
 Pruyn
 
 court held that a third party can bring a direct action on a stipulated judgment if the insurer failed to provide a defense, there was a final judgment, and “. . . the nature and extent of judicial oversight of, or participation in, the settlement . . . give some assurance that there was no fraud and collusion in the making of the settlement.” (36 Cal.App.4th at p. 516.)
 

 Here, Mercury was given ample notice of the action and on two occasions declined settlement proposals. Mercury could hardly have been surprised that the claim proceeded to a default judgment. A default judgment for personal injury results only after the court conducts a hearing to consider the plaintiff’s evidence and to award such damages as that evidence shows to be just. (Code Civ. Proc., § 585, subd. (b).) The judgment that resulted in favor of Amato’s mother-in-law, Jacqueline Sutton, was the product of a sufficient “significant independent adjudicatory action by the court, thus mitigating the risk of a fraudulent or collusive settlement between an insured and the claimant. Final judgments entered under . . . these circumstances are binding on the insurer which has wrongfully abandoned its insured and may be enforced directly under Insurance Code section 11580.”
 
 (Pruyn
 
 v.
 
 Agricultural Ins. Co., supra,
 
 36 Cal.App.4th at pp. 517, 523.)
 

 Even though the present matter is an action by the insured and not a direct action governed by Insurance Code section 11580, Amato is entitled to
 
 *839
 
 recover the amount of the judgment since he remains liable as a judgment debtor. It may seem quixotic that Sutton is denied recovery on her direct action on the policy but Amato is entitled to recover for Mercury’s failure to defend. However, the distinction is explainable by the difference in the nature of their respective claims. Sutton’s claim depends on the contract terms of the coverage provisions of the insurance policy, whereas Amato’s claim is based on the application of the judicially expanded duty to defend. “It is well established in California that ‘an insurer that wrongfully refuses to defend is liable on the judgment. . . . [Citations.]’ ”
 
 (Samson
 
 v.
 
 Transamerica Ins. Co., supra,
 
 30 Cal.3d 220, 237.)
 

 Gray
 
 v.
 
 Zurich Insurance Co., supra,
 
 65 Cal.2d 263, 280, provides the rationale for the result we reach here: There the court rejected imposing on the insured “ ‘the impossible burden’ of proving the extent of the loss caused by the insurer’s breach.” It added, “As this court said in an analogous situation in
 
 Arenson
 
 v.
 
 National Auto. & Cas. Ins. Co.
 
 (1957) 48 Cal.2d 528, 539 . . . : ‘Having defaulted ... the company is manifestly bound to reimburse its insured for the full amount of any obligation reasonably incurred by him. It will not be allowed to defeat or whittle down its obligation on the theory that plaintiff himself was of such limited financial ability that he could not afford to employ able counsel, or to present every reasonable defense, or to carry his cause to the highest court having jurisdiction .... Sustaining such a theory . . . would tend ... to encourage insurance companies to similar disavowals of responsibility with everything to gain and nothing to lose.’ ”
 

 One remaining detail requires resolution. Mercury contends the matter should be remanded and Mercury be given an opportunity to prove the default judgment was the product of collusion. Had Mercury timely raised this argument it would be consistent with the rule of
 
 Pruyn
 
 v.
 
 Agricultural Ins. Co., supra,
 
 36 Cal.App.4th at page 530, that “[I]f the plaintiff produces evidence of the basic or foundational facts, then the burden of proof will shift to the defendant insurers to persuade the trier of fact, by a preponderance of the evidence, that [the] settlement did not represent a reasonable resolution of plaintiff’s claim or that the settlement was the product of fraud or collusion.” But the time for Mercury to raise the issue of fraud or collusion was in the first trial. If, as intimated by Mercury in its petition for rehearing in this appeal, the court precluded Mercury from doing so, the time for Mercury to raise that issue was in the first appeal. If Mercury was inclined to contend that the default judgment against Amato was unreasonable or the product of fraud or collusion, the time to assert it has long since expired.
 

 Instead of remanding the matter for further trial, we shall simply direct the trial court to enter judgment for Amato, as before, for the amount of the
 
 *840
 
 underlying judgment. The prior statement of decision recites that Amato waived any additional compensatory damages (e.g., emotional distress) when informed the court would not award punitive damages. We may infer Amato was satisfied to be awarded the amount of the underlying judgment and did not seek other forms of damages until remand after we reversed the prior judgment. Similarly, as discussed
 
 ante,
 
 it is now too late for Mercury to complain the default judgment was collusive. Had we known at the time of
 
 Amato I
 
 what we know now, we would have affirmed the prior judgment. In these circumstances we see no good reason to require yet another round of proceedings.
 

 Disposition
 

 The judgment is reversed and the trial court is directed to enter judgment for Amato in the amount of $165,906 plus appropriate interest. Costs on appeal are awarded to Amato.
 

 Hastings, J., and Aranda, J.,
 
 *
 
 concurred.
 

 Respondent’s petition for review by the Supreme Court was denied June 11, 1997. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.
 

 [1]
 

 On remand after
 
 Amato
 
 /, Amato argued his damages were not limited to the (nonexistent) costs of defense. Amato offered to prove the following facts: Following Mercury’s refusal to defend, Amato had no funds to hire counsel; the matter was tried as an uncontested default; Amato suffered emotional distress by having the litigation pending and having it go uncontested without the assistance of counsel; had the lawsuit been contested, Amato would have testified he was driving on the desert from Las Vegas at a speed which was not unusual for those conditions but probably in excess of the speed limit, when he encountered a vehicle driven at an abnormally slow speed; when Amato applied the brakes, Sutton, who was asleep and who was not wearing her seatbelt, was propelled against the dashboard and windshield, suffering serious injuries; Sutton had no recollection of the circumstances of the accident; in the opinion of an expert attorney in personal injury cases, had this matter been contested with the resources of an insurance carrier the judgment almost certainly would have been less than $165,000, based in part on the comparative negligence of Amato, Sutton, and the other driver, and upon impeachment of Sutton’s damages.
 

 Mercury offered to prove that prior to the default judgment it was agreed between Sutton and Amato that a default would be taken, that Sutton would make no effort to collect it from Amato, and that jointly they would then seek recourse from Mercury.
 

 *
 

 Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.