Filed 4/22/14  San Diego Apartment Brokers v. California Capital Ins. Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO APARTMENT BROKERS, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CALIFORNIA CAPITAL INSURANCE COMPANY, <br><br> Defendant and Appellant. | D062945 <br><br><br> (Super. Ct. No. 37-2010-00072375-CU-IC-EC) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Wade & Lowe and Edwin B. Brown for Defendant and Appellant.

Niddrie, Fish & Addams LLP and John S. Addams; Ryan Mercaldo LLP, Norman A. Ryan and Giles T. Townsend for Plaintiff and Respondent San Diego Apartment Brokers, Inc.

In this opinion we hold an insurer may be liable for a settlement negotiated by the insured as damages for a tortious breach of the duty to defend. In addition, we affirm related evidentiary orders and summary adjudication, and find sufficient evidence supported the jury's finding of bad faith.

San Diego Apartment Brokers, Inc. (Brokers) sued California Capital Insurance Company (CCIC) for breach of contract and breach of the covenant of good faith and fair dealing for failing to defend and indemnify Brokers in a lawsuit brought by a resident of an apartment complex it managed. The court granted summary adjudication in favor of Brokers, finding CCIC had a duty to defend. Brokers proceeded to trial on its claims for breach of the duty to defend and bad faith based on that breach. The jury found CCIC's decision not to defend Brokers was made in bad faith and awarded Brokers the cost of its defense as well as $20,000 paid to settle the underlying lawsuit. On appeal, CCIC contends it had no duty to defend or indemnify Brokers and the judgment should be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

A. The Insurance Policy

CCIC insured Brokers under a general liability policy. That policy covered " 'bodily injury' " caused by an "occurrence" and "personal injury" caused by an offense arising out of the insured's business. "Bodily injury" was defined as "bodily injury, sickness or disease sustained by a person. . . ." "Occurrence" was defined as "an accident." "Personal injury" meant an "injury, other than bodily injury, arising out of one or more of the following offenses," including the "wrongful eviction from, wrongful

2

entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord, or lessor."

B. Underlying Litigation

Brokers managed The Pines Apartments in El Cajon, California. Jose Urista, his daughter, wife Jessica Sanchez and Sanchez's son (Urista's stepson) lived in an apartment in the complex. Brokers received complaints about children riding bicycles in the parking lot and other common areas in the complex. As a result, it adopted rules prohibiting bicycle riding. According to Brokers, after the rules were adopted Urista's stepson continued to ride his bicycle in the complex. After receiving more complaints, Brokers warned Urista verbally and in writing but the complained of conduct continued. Brokers then served an eviction notice on Urista giving the family 60 days to vacate the apartment.

Before the 60 days lapsed, Urista sued the owners of the complex, Brokers and Waleska Berio, the onsite manager for the apartment complex. The complaint, filed in federal court, alleged Urista was playing ball with his three-year-old daughter when Berio told him it was prohibited by the complex's rules. Urista claimed he felt intimidated by Berio and as a result tried to keep his daughter indoors. According to the complaint, thereafter Urista was pushing his daughter on a tricycle when Berio ordered him to stop. After Urista told Berio he was doing nothing wrong, Berio allegedly said "[t]hen I'll take care of you." Several days later Brokers served Urista with the 60-day eviction notice.

In a section of the complaint titled "Injuries," Urista listed "loss of important housing opportunities, violation of his civil rights, deprivation of the full use and enjoyment of his tenancy, wrongful eviction, and severe emotional distress and physical injury, humiliation and mental anguish, including bodily injury such as stomach aches; [headaches]; sleep loss; feelings of depression, discouragement, anger and nervousness; and reliving the experience; and other special and general damages according to proof . . . ." He specifically pled claims for violations of the federal Fair Housing Act (42 U.S.C. § 3604), California's Fair Employment and Housing Act (Gov. Code, § 12955), California's Unruh Civil Rights Act (Civ. Code, § 51) and negligence. Urista's negligence claim asserted Brokers failed to properly "hire, train, supervise, and discipline" their employees to ensure there would be no discrimination, which caused Urista to suffer "wrongful eviction" and "bodily injury, including severe humiliation, physical and emotional distress."

After receiving the complaint, Brokers tendered its defense to CCIC. Vicky Hanneman, CCIC's senior branch manager, reviewed the complaint and took the recorded statement of Brokers's president Jeffrey Castellaw. Castellaw told Hanneman that Brokers had not yet evicted Urista, but had refused his rent payment to avoid invalidating its eviction notice.

Hanneman then wrote Craig McMahon, Brokers's attorney in the Urista lawsuit, indicating CCIC would not defend Brokers because Urista had not been evicted from his apartment and there was no allegation of bodily injury caused by an occurrence. Brokers's coverage attorney, Brian Worthington, responded to CCIC asking it to

4

reconsider the denial. Worthington pointed out there was potential coverage because Urista was seeking recovery for wrongful eviction. Worthington also informed Hanneman that Sanchez and her daughter had moved out of the apartment after the alleged discrimination, raising an additional basis for potential coverage based on a theory of constructive eviction. Further, he noted the complaint contained potentially covered allegations that Urista suffered bodily injury as a result of Brokers's negligent hiring, training and supervision of Berio.

After receiving Worthington's letter, CCIC retained coverage attorney Lance Orloff to evaluate the claim. Orloff reviewed the underlying complaint, Castellaw's recorded statement, Worthington's letter, and the policy. In his response to Worthington's letter, Orloff maintained CCIC had no duty to defend. According to Orloff, (1) Urista did not claim separate physical injury, (2) Brokers's managerial decisions and failures were not accidents, (3) there was no wrongful eviction because Urista still lived in the complex, and (4) the information that Urista's wife and child may have moved out because of discrimination did not trigger coverage because Urista still lived there.

Until this action, there were no further communications between Brokers and CCIC. Although Brokers maintained Urista's complaint had no merit, it settled the lawsuit for $20,000 in order to avoid the expense of continued litigation.

C. Brokers's Action Against CCIC

After settling Urista's claims, Brokers sued CCIC for breach of contract and bad faith. Brokers moved for summary adjudication, seeking a determination that CCIC had a duty to defend Brokers. Brokers argued Urista's complaint alleged wrongful eviction, a

5

potentially covered personal injury, and bodily injury resulting from negligent supervision, which was also potentially covered. Brokers also contended Sanchez's departure from the apartment created the potential for coverage under a constructive eviction theory.

CCIC opposed the motion, arguing Urista's complaint was a noncovered discrimination action. It contended that, although the words "wrongful eviction" were used in the complaint, a wrongful eviction claim was not possible because Urista still lived in the apartment. CCIC also argued the complaint did not plead a covered bodily injury. The trial court agreed with Brokers, finding CCIC had a duty to defend. After the ruling, CCIC sent Brokers a check for the attorneys fees Brokers paid to defend Urista's claims, reserving its right to seek reimbursement. CCIC then pursued its own motion for summary judgment asking the court to reverse its prior ruling and find CCIC had no duty to defend or indemnify. CCIC relied primarily on Sanchez's deposition testimony (who it deposed after the court's summary adjudication of the duty to defend) that she and her son moved out of the apartment because of marital problems, not as a result of Brokers's actions. The trial court denied the motion.

Before trial, Brokers filed motions in limine seeking to exclude the testimony of Sanchez and Urista concerning the reasons Sanchez moved out of the apartment and documents from a family law proceeding between them. Brokers argued that because the court had already found CCIC had a duty to defend and it was not proceeding to trial on its claim for breach of the duty to indemnify, any information CCIC obtained about Sanchez after CCIC refused Brokers defense was irrelevant and prejudicial. CCIC

6

opposed the motion contending that, even if the duty to defend was not an issue for trial, the evidence was relevant to its liability for indemnity and whether its denial of a defense was in bad faith. The court granted the motions in limine.

The trial lasted two days. At the conclusion, the jury was advised the parties stipulated the court had already ruled CCIC breached its duty to defend Brokers. The parties agreed to a special verdict form that asked the jury whether CCIC's breach of contract damaged Brokers, whether CCIC also breached the covenant of good faith and fair dealing, and what amount of damages Brokers incurred as a result of each breach. The jury found CCIC's breach of contract damaged Brokers, that CCIC had also breached the covenant of good faith and fair dealing, and that both breaches resulted in damages of $30,552. Judgment was entered in favor of Brokers and CCIC timely appealed.

## DISCUSSION

### A. General Legal Principles

We independently review an order granting summary judgment or adjudication, viewing the evidence in the light most favorable to the nonmoving party. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) We first identify the issues framed by the pleadings because it is those issues the papers must address. (*Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1054.) Second, we determine if the moving party's evidence demonstrates the opponent cannot establish a defense and justifies a judgment in the moving party's favor. (*Ibid.*) In order to defeat the motion for summary adjudication, there must be evidence submitted that is sufficient to raise a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).)

7

A party challenging discretionary rulings on motions in limine must demonstrate the court's discretion was so abused " 'it resulted in a manifest miscarriage of justice.' " (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 456.) A miscarriage of justice occurs only when this court, after examining the entire case, concludes " 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

Finally, "where a trial court's factual finding is challenged on the ground there is no substantial evidence to sustain it, the power of the reviewing court begins and ends with the determination as to whether, on the whole record, there is substantial evidence, contradicted or uncontradicted, that will support the trial court's determination." (*San Diego Metropolitan Transit Development Bd. v. Handlery Hotel, Inc.* (1999) 73 Cal.App.4th 517, 528.) This court "views the evidence in the light most favorable to the respondent[ ] [citation], resolves all evidentiary conflicts in favor of the prevailing party and indulges all reasonable inferences possible to uphold the trial court's findings." (*Ibid.*)

B. Summary Adjudication and Summary Judgment Rulings

CCIC contends the trial court erred by granting Brokers's motion for summary adjudication of Brokers's claim for breach of the duty to defend. CCIC also argues the court should have granted its motion for summary judgment. We disagree.

An insurer's "duty to defend is broader than the duty to indemnify." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 (*Montrose*).) The carrier "must defend a suit which *potentially* seeks damages within the coverage of the policy."

(*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 275 (*Gray*), italics in original.) Once a plaintiff makes a claim that, if true, would be covered under the policy, the duty to defend is triggered. "[T]he ultimate question is whether the facts alleged do fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of insurer to insured under the terms of the policy." (*Id.* at p. 275, fn. 15.)

"The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 (*Horace Mann*).) "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." (*Ibid.*) "Conversely, where such facts eliminate the potential for coverage, the insurer may decline to defend even where the bare allegations of the complaint suggest potential liability." (*Pardee Construction Co.* (2000) 77 Cal.App.4th 1340, 1350 (*Pardee*).) "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." (*Horace Mann*, at p. 1081.) "An insurer may have a duty to defend even though it ultimately may have no obligation to indemnify, either because no damages are awarded in the underlying matter against the insured or because the actual judgment is for damages not covered under the policy." (*Pardee*, at p. 1351.)

"To defend meaningfully, the insurer must defend immediately." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 49.) "Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its

behalf." (*Montrose*, *supra*, 6 Cal.4th at p. 295.)  The insurer also must defend entirely. "It cannot parse the claims, dividing those that are at least potentially covered from those that are not." (*Buss v. Super Court*, at p. 49.)  The duty to defend is a "continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded [citation], or until it has been shown there is *no* potential for coverage . . . ."  (*Montrose*, at p. 295.)

Urista's complaint listed "wrongful eviction" and "deprivation of the full use and enjoyment of his tenancy" as injuries he suffered as a result of Brokers's actions.  CCIC's general liability policy covered personal injuries arising from Brokers's business and obligated CCIC to defend any suit seeking damages for such injuries.  The policy specifically defined "personal injury" to include "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord, or lessor."  Urista's allegations fell squarely within the policy's definition of a covered personal injury, giving rise to the duty to defend.

CCIC contends that, despite Urista's allegation of wrongful eviction, summary adjudication of Brokers's claim for breach of the duty to defend was improper because Urista did not specifically plead a "cause of action" for wrongful eviction.  The duty to defend, however, "arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause pleaded by the third party." (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 510.)  "[C]ourts do not examine only the pleaded word but the potential liability created by the suit."

(*Gray*, *supra*, 65 Cal.2d at p. 276.) "The scope of the duty does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the alleged facts or known extrinsic facts reveal a possibility that the claim may be covered by the policy." (*Atlantic Mutual Ins. Co. v. J. Lamb, Inc.* (2002) 100 Cal.App.4th 1017, 1034, italics omitted.) Urista claimed damages from wrongful eviction. These allegations, regardless of any technical deficiency, gave rise to the potential for coverage.

CCIC also argues the extrinsic fact that Urista still lived in the apartment at the time it denied Brokers's defense eliminated the potential for coverage. This fact, however, addressed the underlying merits of Urista's claims. Even if Urista could not succeed on a claim for wrongful eviction because Brokers allowed Urista to remain in the apartment after Urista sued Brokers, CCIC still had a duty to defend under the terms of its policy. "The fact that [the insurer] may have known of a good defense, even an ironclad one, to the [underlying] claim [does] not relieve it of its obligation to defend its insured." (*CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 609, fn. 4.) "If [Urista's] claims were indeed so insubstantial as not to warrant any damages, [CCIC] should have raised that defense in the underlying action for [Brokers]'s benefit," rather than refuse to defend the claim. (*Horace Mann*, *supra*, 4 Cal.4th at p. 1086; see also *ibid.* ["[W]hen the underlying action is a sham, the insurer can demur or obtain summary judgment on its insured's behalf and thereby obviate the necessity of further defense"]; and *Montrose*, *supra*, 6 Cal.4th at p. 298 ["insurer may not decline to defend a suit merely because it is devoid of merit, but instead must assert appropriate defense on its insured's behalf in the underlying action"].)

11

In addition, at the time CCIC refused to defend Brokers, CCIC had been informed by Worthington that Urista's wife and stepchild were no longer living in the apartment. In his letter responding to CCIC's initial denial, Worthington pointed out to CCIC that this extrinsic fact could give rise to a claim for "constructive eviction" because Sanchez left the apartment after the allegedly discriminatory conduct by Brokers. CCIC did not investigate the reasons for Sanchez's move until well after Brokers brought its claims against CCIC. If such a "constructive eviction" claim was invalid because Sanchez's departure was unrelated to Brokers's conduct, CCIC should have investigated that possibility before it refused to defend Brokers. (See *Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, *supra*, 100 Cal.App.4th at p. 1034 ["Once that possibility of coverage has been raised . . . then the insurer may defeat such claim of coverage by extrinsic evidence, but only where ' "such evidence presents *undisputed* facts which *conclusively* eliminate a potential for liability." ' (*Montrose*, *supra*, 6 Cal.4th at pp. 298-299)"].)

In sum, the allegations made by Urista and the extrinsic facts known to the parties at the time were reasonably interpreted to constitute a claim of wrongful eviction. That claim was sufficient to trigger CCIC's obligation under the policy to provide Brokers with a defense and supported Brokers's motion for summary adjudication of that duty. Because the wrongful eviction claim was sufficient to trigger CCIC's duty to defend, we decline to address whether Urista's bodily injury claim based on a theory of negligent supervision of Berio also triggered the duty. (See *Buss v. Superior Court*, *supra*, 16 Cal.4th at p. 49 [With respect to the duty to defend, the insurer "cannot parse the claims, dividing those that are at least potentially covered from those that are not."].) The court

12

did not err in granting Brokers's motion for summary adjudication of CCIC's breach of the duty to defend, or by denying CCIC's motion for summary judgment on the same issue.

C. Exclusion of Evidence of Actual Coverage

After the court granted summary adjudication of the duty to defend and denied summary judgment for CCIC, Brokers proceeded to trial solely on damages for the breach of the duty to defend and bad faith stemming from that breach. Brokers did not proceed on its claim for breach of the duty to indemnify. As a result, the trial court excluded evidence that related only to actual coverage as irrelevant and prejudicial. CCIC contends it should have been permitted to present "evidence that the Urista lawsuit was *not* covered by the . . . Policy." We disagree. On the facts of this case, actual coverage was not relevant to whether the settlement damages were caused by CCIC's breach of the duty to defend.

An insurer who refuses to defend a third-party action against its insured may be held liable for damages "because of its refusal—even though, had it defended the third-party action, it might have escaped liability for the resulting judgment." (*Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 833.) To avoid such a dilemma the insurer "can obtain a declaratory judgment determining whether there is coverage . . . or it can defend under a reservation of rights and thereby preserve its right to dispute liability for the third-party judgment." (*Ibid.*; see also *Gray*, *supra*, 65 Cal.2d at pp. 271-272 ["Although insurers have often insisted that the duty arises only if the insurer is bound to indemnify the insured, this very contention creates a dilemma. No one can

13

determine whether the third party suit does or does not fall within the indemnification coverage of the policy until that suit is resolved. . . . The carrier's obligation to indemnify inevitably will not be defined until the adjudication of the very action which it should have defended."].)

The facts before this court are like those in *Amato v. Mercury Casualty Co.*, *supra*, 53 Cal.App.4th 825 (*Amato*). There, the insurer tortiously breached its duty to defend and was held liable for a default judgment entered against the insured (Amato) who negligently caused an automobile accident. (*Id*. at p. 829.) The insurer refused to defend Amato in the underlying suit despite its knowledge of facts that, if true, demonstrated coverage. (*Ibid*.) Once the insurer refused to defend, Amato could not afford his own defense and a default judgment was entered against him. (*Id*. at p. 830.) Amato then sued for breach of contract and the covenant of good faith and fair dealing. (*Ibid.*)

The jury concluded there was no actual coverage under the policy, but the trial court found the insurer had unreasonably breached its duty to defend and awarded Amato the full amount of the underlying default judgment. (*Id*. at pp. 830-831.) The court of appeal affirmed, holding the default was proximately caused by the insurer's breach of the duty to defend and, therefore, recoverable regardless of the existence of coverage. (*Id*. at p. 834.) Amato was not required to "conduct a 'trial [of the underlying case] within a trial,' in order to recover the amount of the default judgment from the insurer who wrongfully refused to defend." (*Id*. at p. 829.)

14

Like the default judgment in *Amato*, Brokers's settlement with Urista was a foreseeable consequence of CCIC's tortious breach. Brokers's president testified the company had "no choice" but to settle because it did not have the resources to pay its defense. Absent CCIC's backing, Brokers entered the settlement to avoid mounting defense costs. The settlement was "proximately caused by [CCIC's tortious] breach of the duty to defend" and was a proper measure of damages regardless of whether Urista's claims were actually covered. (*Amato*, *supra*, 53 Cal.App.4th at pp. 833-834; see also *Gray*, *supra*, 65 Cal.2d at pp. 280-281 [Damages for breach of the duty to defend are not limited to defense costs.].)

The cases CCIC relies on do not compel a different result. The general liability insurer in *Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553 (*Hogan*) refused to defend a third-party suit. The underlying litigation in *Hogan* resulted in a judgment against the insured after evidence was presented that apportioned damages among various theories of recovery, only some of which were covered under the policy. (*Hogan*, at p. 557.) Because the underlying case was litigated to conclusion there were clear lines between covered and noncovered losses. In that situation, the noncovered losses were rightly excluded from the damages for the insurer's nontortious breach of the duty to defend. Unlike Brokers's settlement with Urista, the losses could not be said to be the consequence of the breach.

*Marie Y. v. General Star Indemnity Co.* (2003) 110 Cal.App.4th 928 (*Marie Y.*) and *DeWitt v. Monterey Ins. Co.* (2012) 204 Cal.App.4th 233 (*DeWitt*) also do not address an insurer's liability for damages outside of attorneys fees and costs for a

15

wrongful breach of the duty to defend. *Marie Y.* held the proper measure of damages against an insurer who "is liable for breach of contract to defend (but not indemnify) an insured, where the insurer is *not* guilty of tortious bad faith, and where the insured in fact retains counsel to defend the claim . . . is the reasonable attorneys' fees and costs incurred by the insured in the defense of the claim." (*Marie Y.*, at pp. 960-961, italics in original.) In *Marie Y.* the trial court conclusively determined there was no actual coverage based on the factual findings in the underlying case, which like *Hogan* was thoroughly litigated and concluded by a judgment after trial. (*Id.* at pp. 941-943.)

In *DeWitt* a default judgment was entered against the employee of an insured apartment complex after the insurer refused his defense in a third-party action. The employee (DeWitt) brought suit for breach of contract and bad faith, seeking damages that included the amount of the default judgment. (*DeWitt*, *supra*, 204 Cal.App.4th at p. 239.) As in this case, DeWitt obtained summary adjudication of the insurer's duty to defend and the insurer was denied summary adjudication of DeWitt's bad faith claim. Before trial, DeWitt abandoned his breach of contract claims, and pursued only various bad faith claims against the insurer, including unreasonably refusing to defend and failing to accept a reasonable settlement offer. (*Ibid*.)

The jury returned a verdict in favor of the insurer finding it had "not unreasonably failed to defend." (*DeWitt*, *supra*, 204 Cal.App.4th at p. 239.) On appeal DeWitt argued the trial court erred by failing to instruct the jury on the insurer's duty to settle. This court held DeWitt was not entitled to the instruction because the duty to settle is implicated only where the insurer has assumed insured's defense or actual coverage exists. (*Id*. at

16

p. 251.) Since DeWitt had not asked the jury to determine the existence of coverage (and there had been no assumption of his defense by the insurer), DeWitt could not prevail on his bad faith claim based on the insurer's failure to settle. (*Ibid.*) Brokers's bad faith claim was not based on CCIC's failure to settle, only on CCIC's breach of its duty to defend.

As discussed, the evidence CCIC complains was improperly excluded concerned the reasons Sanchez and Urista's stepson moved out of the apartment. CCIC argues this evidence could have supported a finding that there was no actual coverage for Urista's claims because Sanchez's departure was unrelated to Brokers's conduct. The reasons for Sanchez's departure, however, were unknown to CCIC at the time it breached its duty to defend Brokers. (See *Filippo Industries, Inc. v. Sun Ins. Co. of New York* (1999) 74 Cal.App.4th 1429, 1441 ["the reasonableness of the insurer's decision must be evaluated as of the time it was made" otherwise carriers " 'could refuse to defend its insured on the slightest provocation and then resort to hindsight for the justification' "].) Because the settlement amount was an appropriate measure of damages for that breach, regardless of the existence of actual coverage, we conclude the trial court's exclusion of the evidence as irrelevant and prejudicial was not an abuse of its discretion.

D. CCIC's Bad Faith

"As in every other contract, an implied covenant of good faith and fair dealing is implicit in an insurance contract." (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1208.) "The fundamental purpose of the implied covenant of good faith and fair dealing is ' "that neither party will do anything which will injure the right of

17

the other to receive the benefits of the agreement." ' " (*Id*. at p. 1209, citing *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573.) "An insurer is said to act in 'bad faith' when it breaches its duty to deal 'fairly' and 'in good faith' with its insured. [Citation.] The term 'bad faith' does not connote 'positive misconduct of a malicious or immoral nature' [citation]; it simply means the insurer acted deliberately." (*Ibid*.)

"[T]o establish the insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.' " (*Major v. Western Home Ins. Co.*, *supra*, 169 Cal.App.4th a p. 1209.) CCIC contends there was insufficient evidence to support the jury's finding it breached the implied covenant of good faith and fair dealing by failing to defend Brokers. CCIC also argues its denial of coverage could not be bad faith because there was a genuine coverage dispute. We are not persuaded.

The jury's finding of bad faith must be sustained if it was supported by credible evidence. "We may not weigh the evidence or consider the credibility of witnesses. We must indulge every legitimate inference from the evidence in plaintiff's favor and accept as true any reasonable evidence in favor of plaintiff, disregarding conflicting evidence. [Citation.] One credible witness may constitute substantial evidence to support the judgment." (*Mariscal v. Old Republic Life Ins. Co.* (1996) 42 Cal.App.4th 1617, 1622-1623.)

Brokers's expert witness, Thomas Carter, testified Urista's allegations of wrongful eviction and bodily injury resulting from negligent supervision were "clearly potentially covered lawsuits." In Carter's opinion, "[i]t was plain, clear and simple . . . that [the

18

Urista] lawsuit contained potentially covered causes of action[] and deserved a defense." This testimony was sufficient to support the jury's finding that CCIC's decision not to defend was unreasonable. As discussed, even if Urista's claim for wrongful eviction was meritless because he had not been evicted, this did not alleviate CCIC's duty to defend.

CCIC's genuine dispute argument is premised on the fact it obtained an opinion from Orloff, an experienced coverage attorney, before finally denying Brokers's claim. The genuine dispute rule, however, "does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723.) "[A]n expert's testimony will not automatically insulate an insurer from a bad faith claim" if the expert's opinion is "based on a biased investigation." (*Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.* (2001) 90 Cal.App.4th 335, 348.)

The jury's finding of bad faith was appropriate if Orloff's opinion was not reasonable or if CCIC could not reasonably believe Orloff's opinion was correct. (*Chateau Chamberay*, *supra*, 90 Cal.App.4th at p. 348.) The record supports such factual findings. For instance, Orloff's letter to Worthington stated Urista was not making a claim for separate "bodily injury" or one for "wrongful eviction," even though CCIC's senior claims manager had already acknowledged the complaint stated both. Similarly, Carter testified CCIC's reliance on Orloff's opinion was unreasonable because the covered claims were "clearly pled" and "triggered the potential for coverage and the duty to defend." Carter stated the covered allegations were "open, simple and basic" and

19

Orloff ignored them. Further, Carter testified Orloff was biased because Orloff had testified in his deposition that he was a forceful advocate for CCIC, not a neutral evaluator of whether coverage existed. In sum, Carter's testimony supported the jury's conclusion that CCIC's decision not to defend Brokers against Urista's lawsuit (and its reliance on Orloff's opinion) was not reasonable.

## DISPOSITION

The judgment is affirmed. Plaintiff is entitled to costs on appeal.


                                                            McINTYRE, J.
WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.