# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Franjo Vernic DBA SF Rehabitat, :
      Objector :
        :
     v.    : No. 4 LIN 2017
        : Argued:  September 17, 2020
Lincoln General Insurance Company, :
In Liquidation,    :
     Respondent :
        :
(Ancillary matter to In Re:  Lincoln :
General Insurance Company In :
Liquidation No. 1 LIN 2015)  :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**      **FILED:  December 3, 2020**


   Presently before the Court is the question of what priority level should be assigned to the claim of Franjo Vernic, d/b/a SF Rehabitat or San Francisco Rehabitat (Vernic), arising out of proceedings surrounding the Notice of Determination (NOD) issued by the Insurance Commissioner in her capacity as Liquidator of Lincoln General Insurance Company (Lincoln).  The Court granted reargument at the Liquidator's request on this specific issue following a single-judge opinion sustaining Vernic's exceptions to the Referee's Report and Recommendation (Report) on Vernic's objections to the NOD.[1]  *Vernic v. Lincoln Gen. Ins. Co.* (Pa. Cmwlth., No. 4 LIN 2017, filed Dec. 5, 2019) (*Vernic I*).

---

[1] The Liquidator had sought reargument on other issues, which the Court denied.

Therein, the Court sustained Vernic's exceptions on the basis that he did not irrevocably assign his claim against Lincoln and his claim should be valued at the total amount of the judgment against Vernic and the attorney's fees he incurred as a result of Lincoln's breach of its duty to defend in California. The Court had also affirmed the Referee's decision assigning the claim to class (b) under the order of distribution provision found in Section 544 of The Insurance Department Act of 1921[2] (Act), as the Liquidator had initially found. The Liquidator subsequently asked to assign Vernic's claim to class (e) as a general creditor claim. Under California law, the Liquidator asserts that recovery of a judgment resulting from a wrongful failure to defend is the equivalent to recovery resulting from a bad faith tort claim, and bad faith tort claims are entitled to no more than class (e) priority. Vernic first argues the Liquidator waived the ability to challenge the priority level by failing to file exceptions like he did to the Report. Assuming the issue was preserved, Vernic argues that the claim should be assigned to class (b) as a "claim[] under policies for losses wherever incurred," 40 P.S. § 221.44(b), as the Liquidator originally found, and the Referee held.

## I. FACTUAL BACKGROUND

### A. The Policy and Underlying California Litigation

The relevant facts were previously set forth by this Court in *Vernic I*, as follows:

> Lincoln issued a commercial general liability policy to Vernic, a general contractor in California, effective from February 15, 2008[,] to February 15, 2009 (Policy). The Policy stated in pertinent part:

---

[2] Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. § 221.44. Section 544 was added by Section 2 of the Act of December 14, 1977, P.L. 280.

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

(Policy at 1.) The Policy also contained a subcontractor exclusion, which permitted Lincoln to disclaim coverage for damages caused by a subcontractor [that] failed to satisfy four specific conditions as set forth in the Policy.

During the Policy's coverage period, Vernic entered into a contract with Edwin A. Hardy (Hardy) to complete remodeling work, including architectural services, at Hardy's single-family residence (Property). Vernic then entered into a contract with Gerald J. Veverka, d/b/a Veverka Architects[] (Veverka), wherein Veverka agreed to provide architectural services at the Property. The contract between Vernic and Veverka included an indemnification provision requiring Vernic to indemnify Veverka for any and all claims arising out of Veverka's architectural services. While Vernic was performing work at the Property and while the Policy was in effect, the Property sustained significant damage due to water infiltration. On November 2, 2011, Hardy filed a civil complaint against Vernic in the San Francisco County Superior Court (trial court), docketed at *Edwin A. Hardy v. Franjo Vernic dba San Francisco Rehabitat*, No. CGC-11-515611, asserting several causes of action arising from Vernic's allegedly defective work and the resulting damages to Hardy's residence.

It is undisputed that both before and after the complaint was filed, Vernic and Hardy each notified Lincoln of the claims of damage allegedly caused by Vernic. On June 14, 2011, Lincoln commenced an investigation into the claims through an independent adjusting company, Sams & Associates (Sams). While Sams authored three reports, the last of which was dated September 29, 2011, its adjuster admitted to being unable to reach a conclusion regarding whether Drummond Masonry, a subcontractor whose defective stone work was believed to be the cause of all or some of the damage to the Property, was hired by Vernic or Hardy. The last report indicated that Sams was unable to complete its claim analysis at that time and would follow up with Vernic to review requested documents from his subcontractors.

3

Despite these facts and the questionable applicability of the Policy's subcontractor exclusion, Lincoln formally denied coverage in letters to Vernic dated October 21, 2011[,] and December 14, 2011. . . . Because Lincoln denied Vernic representation and Vernic could not afford to hire a private attorney at that time, Vernic filed a *pro se* response to Hardy's complaint.

On or about February 28, 2013, Hardy filed an amended complaint adding Veverka as a defendant.[] Veverka tendered the defense of the amended complaint to Vernic and Lincoln, and Lincoln denied the tender and refused to defend Veverka. Thereafter, Veverka served a cross-complaint on Vernic for express indemnity. Vernic claims he was financially unable to file a response to either Hardy's amended complaint or Veverka's cross-complaint. While Vernic did have private counsel for a period of time during the parties' subsequent mediation, he was unable to afford trial counsel, and the case proceeded to an uncontested bench trial. The trial court subsequently entered judgment in favor of Hardy and against Vernic in the amount of $846,779.09 . . . , and entered judgment in favor of Veverka and against Vernic in the amount of $180,178 . . . , for a total judgment of $1,026,957.09[,] (California judgment).

*Vernic I*, slip op. at 2-4 (footnotes omitted).

While the litigation was pending, the parties also entered into various "agreements." The first was a "Stipulation re Consent to Judgment and Uncontested Trial" (Stipulation), which was not signed by any of the parties, but indicated that Vernic could not afford counsel to defend against the claims and, therefore, he agreed not to contest the claims and assigned Hardy and Veverka all rights, claims, interest, and title in relevant insurance policies. *Id.* at 4-5. The parties also entered into a Settlement Agreement and Mutual Release (Agreement) signed by the relevant parties, which provided in relevant part that Vernic would stipulate to a judgment and covenant not to execute against him or Lincoln and Vernic would "seek recovery from his liability insurer . . . [with] any recovery

4

from Lincoln . . . apportioned as between [Hardy], [] Veverka, and Mr. Vernic." *Id.* at 6 (alterations in original) (emphasis omitted).

B.    Liquidation Proceedings

In 2015, "upon the petition for review in the nature of a complaint for order of liquidation of Lincoln filed by the Insurance Commissioner, . . . this Court ordered that Lincoln be liquidated pursuant to Article V of the [Act]," the Liquidator was appointed, and claims against Lincoln were ordered to be filed. *Id.* at 7. "Vernic filed a timely proof of claim on June 13, 2016, demanding $1,092,250.09 under the Policy . . . ." *Id.* The Liquidator issued the NOD, assigning a priority level (b) classification and valuing Vernic's proof of claim at zero dollars, explaining that Vernic assigned any and all claims he had against Lincoln to Hardy and Veverka. (NOD at 1.)

Following issuance of the NOD,

Vernic filed timely objections to the NOD arguing that (1) he did not effectively assign his claims against Lincoln to other parties, (2) payment of the judgment against him is not a prerequisite to the allowance of a claim under the law, and (3) Lincoln improperly denied him indemnification and a legal defense. The Liquidator filed a response denying the material allegations in Vernic's objections, and asserting that (1) its denial of coverage was justified by the terms of the Policy, (2) Vernic assigned his rights against Lincoln to Hardy and Veverka, neither of whom filed a proof of claim, and (3) the California judgment is unenforceable against Lincoln's estate because it was obtained through collusion.

*Vernic I*, slip op. at 8. At the parties' request, this Court appointed a Referee, and the parties agreed to use a summary judgment procedure before the Referee. Before the Referee, the Liquidator asserted in response to Vernic's claims that,

even if Vernic had not assigned his claim, his claim should be assigned class (e) priority. Based upon the parties' submissions, the Referee then issued his Report.

> Specifically, the Referee recommended that the NOD be affirmed with respect to the priority level (b) classification of Vernic's claim, but reversed as to the value of the claim. The Referee concluded that Lincoln had a duty to defend Vernic in the California litigation because Hardy's complaint and amended complaint contained allegations of property damage "actually or **potentially** within the coverage of the [P]olicy." (Report at 9 (emphasis in original).) However, relying on the Stipulation rather than the Agreement, the Referee concluded that "Vernic assigned any and all rights to recover indemnity benefits from Lincoln to Hardy and Veverka[] . . . ." (*Id.* at 11.) Therefore, Vernic could not recover on the California litigation. The Referee went on to conclude that Vernic did not and could not assign his right to a defense, as that right is personal to the insured. As such, the Referee recommended that Vernic's claim be valued at $44,131.69, the uncontested amount he personally paid for private counsel as a result of Lincoln's breach [of its duty] to defend. Given his decision, the Referee also determined that challenges to the procedure by which Hardy obtained the California judgment, which would include the Liquidator's allegation of collusion, were moot.
>
> On February 8, 2019, Vernic filed . . . exceptions to the Report claiming as follows:
>
>> 1.  The Referee erred in determining that the sole damages flowing from the breach of the duty to defend were defense fees and costs, as the judgment entered against Vernic also flows directly from the failure to defend; and
>>
>> 2.  The Referee erred in determining that Vernic lacks standing to pursue indemnity claims, because this finding is based upon an erroneous determination that Vernic irrevocably assigned his claims against Lincoln, a finding which is not supported by, and is contravened by, the great weight of the evidence.

*Vernic I*, slip op. at 8-9 (alterations in original).

Vernic contended that although the Referee was correct that Lincoln breached its duty to defend Vernic, the Referee incorrectly concluded that the only damages recoverable were legal fees and costs because California law provides that an insurance company is liable for the entire judgment entered against the insured when the insurer breaches the duty to defend or wrongfully denies coverage. Vernic further asserted that he had standing because the evidence did not support a determination that he irrevocably assigned his right to recover damages from Lincoln. (*See* Vernic's Memorandum of Law in Support of Exceptions to the Referee's Report at 4.) Vernic argued that the Stipulation was not a final agreement but contemplated an assignment of rights that would be effective upon the date such an assignment was executed; however, no such assignment was ever executed. The Liquidator disputed both of these points and, with respect to the value of the claim, asserted that under California law, refusal to defend is a breach of the duty of good faith and fair dealing for which the measure of damages is the insured's legal fees. (*See* Memorandum of Law in Support of Response of Lincoln at 12.) Vernic filed a response, emphasizing that the damages resulting from Lincoln's failure to defend include both defense costs and the amount of the California judgment and maintaining no assignment of Vernic's claim. The Liquidator responded in a sur-reply memorandum of law, arguing that given the Referee's correct conclusion that Vernic assigned his claim for the amount of the judgment, only the unassignable legal fees were recoverable. Moreover, the Liquidator asserted that the Referee never addressed the issue of whether the value of the California judgment would carry a different priority level because it flowed from a bad faith refusal to defend. Therefore, if the Referee was reversed with regard to the question of the assignment of the claim, the Liquidator

7

requested that this Court remand for the Referee to decide the priority issue, which was fully briefed but not addressed by the Referee. (*See* Sur-Reply Memorandum of Law in Support of Lincoln at 4-5.)

C. *Vernic I* and the Application for Reargument

After argument, the Court sustained Vernic's exceptions. With regard to the question of standing, the Court disagreed with the Referee that the documentary evidence and conduct of the parties demonstrated that Vernic intended to assign his claims. To be effective, an assignment must manifest the intention "to transfer the right, without further action. . . ." *Vernic I*, slip op. at 11 (emphasis omitted). The Court found that the Stipulation did not meet that requirement, and referred to another document, "the related assignment," which was never executed. *Id.* at 12. In contrast, the Agreement, which did not contain an assignment, "show[ed] marked indicia of finality." *Id.* The Court also found that the conduct of the parties did not support the finding of an assignment. Noting that during the extensive history of litigation in federal and state courts, the parties had "vacillated on the issue of whether an assignment was made," the Court concluded that "one thing remains clear – Vernic is the ***only*** party who filed a proof of claim during Lincoln's liquidation," even though Veverka and Hardy were notified of the claim period as well. *Id.* at 13. In summary, given that "the entire transaction, the language of the documents, and the conduct of the parties [did] not clearly show that their intent was to assign Vernic's right to recover from Lincoln," the Court sustained Vernic's exception to the Referee's conclusion that he irrevocably assigned his claims against Lincoln and so lacked standing. *Id.*

With regard to damages, the Court reiterated that the Referee determined Lincoln had a duty to defend Vernic, which it breached, and the Liquidator did not

8

dispute that determination or file an exception to the Report, but instead argued that the Court should adopt the Referee's conclusion that Vernic's award did not include the amount of the California judgment. Because the Court agreed with the Referee that Hardy's claims against Vernic included allegations of property damage that may be within the Policy's coverage, the Court reviewed what damages Vernic could recover. The Referee's determination that the only recoverable damages were litigation costs or attorney's fees was premised upon the determination that Vernic assigned his right to recover under the Policy, with which the Court disagreed; therefore, the Court reviewed California law governing an insurer's denial of coverage or refusal to defend, which the parties do not dispute controls here. The Court explained that "when 'a liability insurer wrongfully denie[s] coverage or refuses to provide a defense, then the insured is free to negotiate the best possible settlement consistent with his or her interests, including a stipulated judgment accompanied by a covenant not to execute.'" *Id.* at 14 (quoting *Pruyn v. Agric. Ins. Co.*, 42 Cal. Rptr. 2d 295, 299 (Cal. Ct. App. 1995)). This was what had occurred in the present case, the Court concluded, as Vernic was unable to afford an attorney and, thus, had to appear pro se to participate in mediation and negotiate a settlement to the best of his abilities. Lincoln did not take the steps to seek declaratory judgment as to coverage under the Policy or defend under a reservation of rights, and because it did not, the Court determined, "[u]nder these circumstances, the verdict is a proximate result of Lincoln's breach of its duty to defend." *Vernic I*, slip op. at 15 (citing *Amato v. Mercury Cas. Co.*, 61 Cal. Rptr. 2d 909, 913, 915 (Cal. Ct. App. 1997) (*Amato II*)[3]).

---

[3] *Amato II* was issued after the California Court of Appeals remanded the case for the
**(Footnote continued on next page…)**

An insurance company that fails to provide a defense "is bound by the judgment against its insured as to all issues which were litigated in the action against the insured," regardless of whether it derives from a good faith settlement, a default judgment, or a judgment without opposition, the Court explained. *Vernic I*, slip op. at 15 (quoting *Amato II*, 61 Cal. Rptr. 2d at 917). Here, because Lincoln was aware of facts bringing the claims within possible coverage of the Policy and it still refused to defend, the Court concluded Lincoln could not "now challenge the judgment by claiming it was the product of collusion or by demanding a trial within a trial." *Id.* Further, the Court found there was sufficient judicial oversight of the trial court to mitigate the risk of a collusive or fraudulent settlement and no remand was necessary to consider the Liquidator's allegation of collusion. *Id.* Accordingly, the Court sustained Vernic's exceptions to the Report, valued Vernic's claim as the total amount of the California judgment, plus the attorney's fees he personally incurred as a result of Lincoln's breach of its duty to defend, and directed the Liquidator to amend the NOD accordingly. *Id.* at 15-16.

The Liquidator timely filed an Application for Reargument, asserting various bases why the Court should exercise its discretion for reargument, including that the Court should address Lincoln's argument as to which priority level applies to Vernic's claim. Because the Court determined the judgment was the proximate result of Lincoln's breach of the duty to defend, the Liquidator

_____

**(continued…)**
trial court to conduct further proceedings in *Amato v. Mercury Casualty Company*, 23 Cal. Rptr. 2d 73 (Cal. Ct. App. 1993) (*Amato I*). On appeal after remand, the California Court of Appeals issued its decision in *Amato v. Mercury Casualty Company*, 58 Cal. Rptr. 2d 784 (Cal. Ct. App. 1996). The California Court of Appeals then granted reargument and issued *Amato II*, which reiterated the conclusions of the 1996 opinion and addressed the new arguments raised for reargument.

10

asserted that Vernic's claim for the amount of the entire judgment was a tort remedy for the failure to defend, rather than a contractual breach, which constitutes a general creditor claim subject to priority (e) classification. The Court granted reargument "limited solely to the issue of what priority level(s) should be assigned to [Vernic's] claim."[4] (January 6, 2020 Order.)

## II. DISCUSSION
### A. Waiver
#### 1. Parties' Arguments

Before reaching the merits of the priority argument, the Court first considers a threshold issue raised by Vernic: whether the Liquidator waived the ability to challenge the priority level. Specifically, Vernic argues that the Liquidator failed to file exceptions to the Referee's Report within 30 days, as required by Pennsylvania Rule of Appellate Procedure 3781(f), Pa.R.A.P. 3781(f). As a result, Vernic argues the Liquidator is now foreclosed from challenging the class (b) priority level assigned by the Referee. Vernic also points out that the class (b) priority level assigned by the Referee is the same priority that the Liquidator initially assigned the claim.

The Liquidator responds that the Liquidator did not waive the priority issue; rather, Vernic did by trying to "refashion" his claim.[5,6] (Liquidator's Brief (Br.) at

---

[4] The Court first granted reargument by Order dated January 3, 2020, and denied the Application for Reargument to the extent that it requested a remand to the Referee. By Order dated January 6, 2020, this Court clarified its prior order granting reargument by limiting the issue to solely that of the priority level.

[5] The Liquidator's arguments concerning waiver have been reordered for ease of discussion.

[6] The Liquidator contends Vernic violated the Court's order granting reargument by raising an issue for which reargument was not granted and asks the Court, if necessary, to strike **(Footnote continued on next page…)**

11

16.) According to the Liquidator, Vernic requested extra-contractual relief in his proof of claim and, in his objections to the NOD, he asserted that his claim sounded in tort, but before this Court, Vernic asserts his claim is contractually based upon the Policy. It was at this time that the Liquidator asserted, at the first opportunity, that Vernic's claim warranted class (e) priority, a position the Liquidator has continually argued since. The Liquidator further argues that because the Referee found Vernic assigned his claim, the Referee did not decide the priority issue and, as a result, the Liquidator could not have filed an exception to the Report challenging priority because the Liquidator was not aggrieved and, therefore, lacked standing. Moreover, the Liquidator argues waiver, generally, is "incompatible" with liquidation proceedings and the Liquidator's statutory duty to protect the interests of Lincoln's insureds by seeking "'equitable apportionment of any unavoidable loss' caused by [] [Lincoln's] failure." (*Id*. at 11 (quoting Section 501(c)(iv) of the Act, 40 P.S. § 221.1(c)(iv)).) Further, the Liquidator argues nothing in the Act precludes the Liquidator from changing the initial priority assignment "as the facts develop," (*id.* at 12), and the Court has the "ultimate power to decide the correct priority assignment for every claim," (*id.* at 13 (citing 40 P.S. § 221.44)).

### 2. *Analysis*

Although the Liquidator did not file a formal exception to the Referee's Report challenging the priority level, the Liquidator has consistently raised the

---

(continued…)

the portion of Vernic's brief related thereto. However, because Vernic argued the Liquidator waived the priority issue in his answer to the request for reargument, we will consider it.

12

issue, at a minimum, as an alternative argument throughout the proceedings. Specifically, before the Referee, the Liquidator contended that even if Vernic had not assigned his claim and had a claim for failure to defend, that claim would warrant no more than (e) priority level. (*See* Liquidator's Response to Vernic's Motion for Summary Judgment at 8-12.) Before this Court, addressing Vernic's exceptions to the Referee's Report, the Liquidator contended that, should the Court determine that Vernic did not assign his claims, this matter should be remanded because "if the entire judgment were recoverable at all by anyone, it would carry a class [(e)] priority rather than a class [(b)] priority because it flowed from a bad faith cause of action." (Sur-Reply Memorandum of Law at 5.)

Before the Referee, the Liquidator prevailed on its argument that Vernic assigned his claim. As a result, the Liquidator was not aggrieved by the Report. Rule 3781(f) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 3781(f), governs the filing of exceptions to a referee's recommended decision.[7] It provides in pertinent part:

> (1) *Time for filing*. Any party may file with the Court exceptions to the Referee's recommended decision no later than thirty (30) days after the filing date of the recommended decision. The exception shall be served on any other party and the referee.
>
> . . . .
>
> (6) *Final order*. Upon completion of its review of exceptions, the Court will enter a final order sustaining or overruling exceptions in whole or in part. . . .

---

[7] The Liquidator cites Rule 501 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 501, which provides that "any party who is aggrieved by an appealable order . . . may appeal therefrom," in support of its argument, but Rule 3781 governs the entire claim procedure in liquidation proceedings from the filing of a claim through to issuance of a final order.

13

(7) *When no exceptions filed.* Any party may apply to the Court for, or the Court on its own initiative may issue, an order either adopting the recommended decision or stating that in the absence of exceptions, the referee's proposed order is entered as the order of the Court.

. . . .

(9) *Waiver.* Unless otherwise ordered by the Court, failure to file timely exceptions to a referee's recommended decision shall be deemed a waiver of further appeal if the Court approves the recommended decision without modification.

Pa.R.A.P. 3781(f)(1), (6), (7), (9).

Because this Court did not adopt the Referee's Report "without modification" but instead sustained Vernic's exceptions, the waiver in Rule 3781(f)(9) resulting from "failure to file timely exceptions to a referee's recommended decision" would not be implicated. Pa.R.A.P. 3781(f)(9). The Liquidator's argument regarding priority level was not implicated until the Court sustained Vernic's exceptions in *Vernic I*. In summary, because the Liquidator raised priority throughout the proceedings, the Referee found in the Liquidator's favor on the assignment issue and did not specifically address the arguments regarding the priority level, and this Court did not adopt the Referee's Report without modification, the Liquidator did not waive the issue of which priority level applies.[8] Accordingly, we turn to what priority level is appropriate for Vernic's claim.

---

[8] Because the Court finds the Liquidator did not waive its argument related to priority, it is unnecessary to address the Liquidator's policy arguments.

14

B.      Priority Level

1.      *Parties' Arguments*

The Liquidator's argument that Vernic's claim belongs in a class (e) priority rather than class (b) priority is twofold:  (1) the judgment for defective construction work was not covered under the Policy; and (2) even if Lincoln wrongly denied Vernic a defense under the Policy, that claim is tort-based, which falls in class (e). First, with regard to whether the judgment was covered under the Policy, the Liquidator argues as follows.  To be entitled to class (b) priority, Vernic must be seeking to recover a benefit to which he was entitled under the Policy.  Lincoln issued Vernic the Policy, which covered bodily injury or property damage due to Vernic's accidental conduct, but the Policy did not cover damage to, or defects in, Vernic's own work.  Hardy alleged in his complaint that he experienced water damage in the new home Vernic built as a result of Vernic's defective construction.  Therefore, this damage did not fall within the coverage of the Policy. California law supports this conclusion; the District Court for the Northern District of California (Northern District Court) recently concluded that "a policy virtually identical to Lincoln's did not apply to defective construction claims against a general contractor and specialty contractor on a hotel project" because defective workmanship is not property damage and, even if it was, there was no coverage given the policy's exclusions.  (Liquidator's Br. at 18-19 (citing *Webcor Constr., LP v. Zurich Am. Ins. Co.*, 372 F. Supp. 3d 1061 (N.D. Cal. 2019), *aff'd*, 801 F. App'x 577 (9th Cir. 2020)).)  The Policy in the present case "did not cover Vernic's contractual assumption of liability for [] Veverka," nor did Veverka allege property damage under the Policy, thereby "eliminating any coverage for Veverka's cross-claim."  (*Id.* at 20.)  The Referee "did not apply either the

15

[P]olicy's language or the California coverage principles . . ." but nonetheless concluded there was an obligation to defend without addressing "whether Hardy's claimed damages even qualified as 'property damage'" or whether other exclusions apply. (*Id.* at 21.)

Second, regardless of whether the claim which Vernic seeks to recover is covered under the Policy, the Liquidator argues the claim warrants only class (e) priority "because it sounds in tort." (*Id.*) In support thereof, the Liquidator argues that the California Court of Appeals held in *Amato II* that "[b]reach of an insurer's duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing, for which tort remedies are appropriate." (*Id.* at 22 (alteration in original) (quoting *Amato II*, 61 Cal. Rptr. 2d at 912).) "Vernic based his claim in the Lincoln estate on *Amato* [*II*]," arguing that when he objected to the NOD, the insurer can be liable for the judgments resulting from third-party litigation where the insurer tortiously does not tender a defense. (*Id.* at 23.) Vernic now claims to be seeking only contractual recovery, but as set forth in *Amato II*, typical contract damages are the costs of defense while tort damages include reimbursement for the judgment, even if it is not covered by an insurance policy. Therefore, even if this Court agrees that Vernic's claim is purely contractual and entitled to priority (b) assignment, Vernic can only recover the amount of his contract damages, the costs of defense, which is $44,131.69 in counsel fees. Although Vernic contends that insureds, such as he, have always been able to recover extra-contractual judgments, the California Court of Appeals would not have had "to resort to tort law" in *Amato II* to award the amount of the judgment if that was the case. (*Id.* at 25.) Additionally, the cases upon which Vernic rely preceded *Amato II*, were mostly "decided in materially different

16

circumstances," and only reiterate the principle that an insurer's breach of its duty to defend may allow the insured to recover the amount of a settlement or judgment. (*Id.*) These cases do not address under what theory, tort or contract, the insured may recover. Finally, this Court is required to treat similar claims consistently, and this Court has already assigned claims like Vernic's to class (e) priority, such as in *Cohen v. Reliance Insurance Company* (Pa. Cmwlth., No. 2 REL 2006, filed January 7, 2013), and *Ario v. Reliance Insurance Company* (Pa. Cmwlth., No. 269 M.D. 2001, filed July 2, 2009). Accordingly, the Liquidator asks this Court to assign Vernic's claim a priority level (e).

Vernic asserts that the class (b) priority is the correct classification, arguing as follows. His claim is "for recovery of losses payable under [the P]olicy," as he seeks to recover amounts awarded against him within the $1,000,000 Policy limit and the defense costs allowed under the Policy. (Vernic's Br. at 20.) This claim for "amounts payable under [the Policy]" falls within priority (b) as do "all claims under policies for losses wherever incurred." (*Id.* at 21 (quoting 40 P.S. § 221.44) (emphasis omitted).) Moreover, the Liquidator's argument otherwise is contrary to California law. Even if the facts surrounding Lincoln's denial of benefits may support a bad faith claim if asserted in a California court, there has been no claim for insurance bad faith in the present case. Vernic seeks only the amounts payable under the Policy. While California law may permit an award of tort damages, in addition to benefits under the Policy where there is a finding of bad faith, Vernic's claim is only for amounts owed under the Policy. If this Court accepted the Liquidator's argument, "losses to the insured flowing from Lincoln's breach of its duty to defend would be assigned an unfavorable priority position simply because the insurer's conduct not only breached the contract but was in 'bad faith.'" (*Id.*)

17

It would be "patently unfair" to follow such logic as it would reward insurers for "engaging in bad faith conduct by potentially having policy-based claims extinguished along with 'bad faith' claims assigned a lower priority." (*Id.* at 21-22.)

Vernic argues that his claim is payable under the Policy because, under California law, "[w]rongful failure to provide coverage or defend a claim is a breach of contract" that implicates liability under the Policy. (*Id.* at 22 (quoting *Isaacson v. Cal. Ins. Guarantee Ass'n*, 750 P.2d 297, 308 (Cal. 1988)). As the California Supreme Court has held, where an insured makes a reasonable settlement after an insurer denies coverage in violation of its contractual duty, the insured may seek to recover the amount of that settlement against the insurer. In this case, the judgment was entered following a bench trial and constitutes presumptive evidence of Vernic's liability and the amount of that liability. This liability derives from Lincoln's breach of its contractual duty to defend; therefore, Vernic did not need to make a showing of tortious breach or bad faith. It is well settled that where an entity is bound by agreement to protect another from liability and does not defend that party despite notice and an opportunity to do so, the entity is bound by the result of the litigation. Lincoln had notice of the action and the opportunity to defend Vernic, but it repeatedly refused to do so. In this way, Vernic's case is like those in California where judgment was entered against the insured which led to a contractual right of recovery, but where there was no claim for insurance bad faith.

Vernic contends this Court agreed that his underlying claims in the California litigation were covered under the Policy because Vernic appeared at the bench trial pro se and judgment was entered against him for property damage and

18

litigation costs. As this Court noted in *Vernic I*, the judgment entered against an insured, such as Vernic, where the insurer fails to defend is "the proximate result of the refusal to defend." (*Id.* at 25.) This longstanding rule established through case law does not require a finding of bad faith. Therefore, the judgment entered against Vernic following Lincoln's failure to defend is recoverable under the Policy and there is no requirement for an action in bad faith in order to recover those losses under the Policy.

Vernic argues the Liquidator's reliance upon *Amato v. Mercury Casualty Company*, 23 Cal. Rptr. 2d 73 (Cal. Ct. App. 1993) (*Amato I*), and *Amato II* is misplaced. The longstanding law is that "the wrongful refusal to defend entitles the insured to recover all damages within the policy resulting from the breach and binds the insurer to the judgment entered against the insured," (Vernic's Br. at 27), and the decisions in *Amato I* and *Amato II* did not change this rule. Rather, although *Amato I* and *Amato II* involved facts supporting a recovery in tort for the amount of the judgment, the California Court of Appeals "did not hold that this was the only avenue to recovery of judgments entered as a result of the failure to defend." (Vernic's Br. at 28.) Moreover, these decisions by the California Court of Appeals cannot alter the controlling rule of the California Supreme Court in *Isaacson* that wrongful failure to provide coverage is a breach of contract. The possibility for recovery under both theories of tort and contract "does not eliminate the insured's right to pursue recovery under a purely contractual theory," and both "types of recovery are [] not coextensive." (*Id.*) Vernic seeks only contractual damages limited to the claims under the Policy. Finally, although the Liquidator cites in its Application for Reargument various Pennsylvania case law and asserts that the priority determination in this case conflicts with that law, Vernic contends

19

that these cases are distinguishable. Vernic's claim should "be evaluated under California law, which holds that both defense costs and the resulting judgment within the policy limit are contractual losses under the policy," bringing Vernic's claim "squarely within the scope of [Section 544(b)]." (Vernic's Br. at 31.) Therefore, the classification of this claim as priority (b) should be affirmed.

### 2. *Analysis*

"[C]laim priority is important to all claimants in the liquidation," where it is anticipated that the insurer "will not have assets sufficient to pay all claims." *Ario v. Reliance Ins. Co.*, 980 A.2d 588, 591 (Pa. 2009). "Recognizing the importance of classifying claims, the General Assembly enacted the Act to ensure that claimants entitled to more protection have prioritized claims." *Id.* at 594. "Claim priority . . . is governed by Section 544 of the Act, [40 P.S. § 221.44,] which sets forth the order of distribution of an insolvent insurer's assets." *Ario*, 980 A.2d at 591. Section 544(b), (e) provides, in relevant part, as follows:

> The order of distribution of claims from the insurer's estate shall be in accordance with the order in which each class of claims is herein set forth. Every claim in each class shall be paid in full or adequate funds retained for such payment before the members of the next class receive any payment. No subclasses shall be established within any class.
>
> . . . .
>
> (b) **All claims under policies for losses wherever incurred**, including third[-]party claims, and all claims against the insurer for liability for bodily injury or for injury to or destruction of tangible property which are not under policies, shall have the next priority. . . .
>
> . . . .

20

(e) Claims under nonassessable policies for unearned premium or other premium refunds and claims of general creditors.

40 P.S. § 221.44(b), (e) (emphasis added). Claims classified under subsection (b) have a higher priority than those classified under subsection (e), meaning claims assigned to class (b) priority will be paid before those assigned to (e). *See Ario*, 980 A.2d at 591.

Here, the Liquidator, in the NOD, initially classified Vernic's claim as priority (b), which the Referee recommended affirming although finding that the only claim Vernic had under the Policy was for his attorney's fees because he had assigned all other rights under the Policy. (Referee's Report at 18-19.) The Court concluded in *Vernic I* that Vernic had not assigned his rights under the Policy and, therefore, was entitled to recover both attorney's fees and the amount of the California judgment under the Policy, but did not expressly address arguments regarding the priority level. *Vernic I*, slip op. at 12-13, 15-16.

We begin with the Liquidator's argument that Vernic's claim is not one that falls within the Policy's coverage. This argument seeks to challenge the Referee's conclusion that Hardy's Complaint "contain[ed] allegations of property damage actually or potentially within the coverage of the [P]olicy," which triggered Lincoln's duty to defend, which it did not do. (Referee's Report at 9 (emphasis omitted).) If the Liquidator disagreed with the Referee's conclusion regarding Lincoln's breach of the duty to defend, the Liquidator could have filed exceptions to the Referee's Report pursuant to Rule 3781, but it did not. As the Court stated in *Vernic I*, "[u]nder these circumstances," where Lincoln knew of facts potentially bringing the claim within its coverage and did not provide a defense, "the verdict is a proximate result of Lincoln's breach of its duty to defend." *Vernic I*, slip op. at 15. Therefore, this Court will not consider the Liquidator's arguments to the extent

21

the Liquidator now seeks to challenge the previous conclusive determination that Lincoln was aware of facts potentially bringing Vernic's claim under the coverage of the Policy and, therefore, breached its duty to defend. Nor will this Court evaluate whether the claims set forth in Hardy's Complaint fall within the coverage of the Policy.

To the extent the Liquidator argues such a determination is necessary to determine whether the claim falls within priority class (b) as a "claim[] under [the P]olic[y] for losses wherever incurred," 40 P.S. § 221.44, we disagree. Under Section 520(d) of Article V of the Act, "[u]pon issuance of the order [to liquidate], the rights and liabilities of . . . [an] insurer and of its creditors, policyholders, shareholders, members and all other persons interested in the estate shall become fixed as of the date of the filing of the petition for liquidation."[9] 40 P.S. § 221.20(d). Moreover, the "[Li]quidator steps into the shoes of the insurer's officers and directors in the conduct of that insurer's affairs." *Koken v. Legion Ins. Co.*, 865 A.2d 945, 958 (Pa. Cmwlth. 2004) (quotation omitted). Therefore, the Liquidator cannot now assert a lack of coverage when Lincoln, although it asserted various Policy exclusions, did not pursue an adjudication of that issue. In short, the Liquidator is essentially stuck with the consequences of Lincoln's decision not to defend Vernic and, as discussed more fully below, the resulting verdict against Vernic. If the Court was to permit the Liquidator to reopen the record to determine whether policy exclusions applied, we would undermine Section 520(d)'s requirement that the parties' rights and obligations are fixed as of the date of the filing of the petition for liquidation. We decline to do so.

---

[9] Section 540(d) was added by Section 2 of the Act of December 14, 1977, P.L. 280.

Thus, we turn to the Liquidator's contention that Vernic's claim arises from Lincoln's breach of its duty to defend, which sounds in tort, and therefore warrants an (e) priority as a claim of a general creditor. It is undisputed that California law applies. As set forth in California law, "where one is bound either by law or agreement to protect another from liability, he is bound by the result of a litigation to which such other is a party, provided he had notice of the suit and an opportunity to control and manage it." *Kershaw v. Md. Cas. Co.*, 342 P.2d 72, 77 (Cal. Ct. App. 1959). Accordingly, an insurer "bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." *Isaacson*, 750 P.2d at 308. Further, when "an insurer erroneously denies coverage and/or improperly refuses to defend the insured in violation of its contractual duties, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement . . . ." *Id.* (internal quotations omitted).

The Liquidator relies upon the California Court of Appeals' decisions in the *Amato* cases to support its position that Vernic's claim is one sounding in tort. In the *Amato* cases, Mercury Casualty Company (Mercury) issued the insured a policy for car insurance that provided, as relevant, coverage for bodily injury sustained by the insured, including resident relatives of the insured. The insured was driving his car with his mother-in-law as a passenger when he was involved in an accident in which his mother-in-law sustained injuries. The mother-in-law sued the insured, the insured requested Mercury to defend him, and Mercury declined on the basis that the policy did not cover the claim because the insured's mother-in-law was not the insured's resident relative. When the underlying case was resolved, the insured and his mother-in-law filed suit for "bad faith breach of

23

insurance contract against [Mercury]." *Amato I*, 23 Cal. Rptr. 2d at 74. The jury concluded that the insured's mother-in-law was residing with him at the time of the accident, and the trial court determined that Mercury breached its duty to defend and awarded an amount equal to the amount of judgment entered against the insured in the underlying case, including costs and post-judgment interest. On appeal, the California Court of Appeals, concluding that Mercury breached its duty to defend, remanded to the trial court for the purpose of determining damages because "where the issues upon which coverage depended were not raised in the underlying action, the insurer [is] not liable for the entire judgment." *Id.* at 79 (citing *Hogan v. Midland Nat'l Ins. Co.*, 91 Cal. Rptr. 153 (Cal. 1970)). In *Amato I*, the "issues relevant to coverage were not decided in the underlying action" and therefore the Court of Appeals determined "the proper measure of damages is that amount which will compensate the insured for the harm or loss caused by the breach of the duty to defend, i.e., the cost incurred in defense of the underlying suit." *Id.* Because it was not clear from the record before the court whether the insured "mounted a defense in the underlying action," or whether the judgment was entered after default, the California Court of Appeals remanded for the trial court to "ascertain the amount of damages, if any, properly awardable." *Id.*

On remand, the insured stipulated that the matter went by default and therefore there was no cost of defense, and the trial court concluded, in light of *Amato I*, that the insured could only recover damages for the cost of defending the underlying suit, of which there were none. The insured appealed, and the California Court of Appeals, "[i]n light of more recent authority and the clarification of the record that the underlying judgment was by default," held that "where an insurer tortiously breaches the duty to defend and the insured suffers a

24

default judgment because the insured is unable to defend, the insurer is liable for the default judgment, which is a proximate result of its wrongful refusal to defend." *Amato II*, 61 Cal. Rptr. 2d at 911. In reaching this conclusion, the California Court of Appeals explained that "[b]reach of an insurer's duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing for which tort remedies are appropriate." *Id.* at 912. Further, "[w]here an insured mounts a defense at the insured's own expense following the insurer's refusal to defend, the usual contract damages are the costs of the defense." *Id.* at 913. The trial court determined in its prior judgment that "Mercury had no good cause to refuse to defend, and Mercury therefore tortiously breached the covenant of good faith and fair dealing." *Id.* Due to Mercury's wrongful refusal to defend and the insured's financial inability to mount a defense, the insured suffered a default judgment and it was not discovered until the subsequent action that there was no coverage under the policy, the California Court of Appeals stated. Therefore, the Court determined that "Mercury is liable for the judgment, which is a proximate result of its wrongful refusal to defend." *Id.* The California Court of Appeals also emphasized that "the duty to defend is of vital importance," and Mercury was required to defend in lawsuits, even where "liability under the policy ultimately fails to materialize." *Id.*

Vernic has not asserted a separate claim of bad faith refusal to defend, as the insured did in *Amato II*, but rather has asserted since he filed the proof of claim that he was entitled to recover the judgment under the Policy and that Lincoln breached its duty to defend. Vernic also persuasively argues that even if his claim arises from Lincoln's bad faith refusal to defend an action that may have been

25

covered under the Policy, it is counterintuitive to give a lower priority to claims for judgments resulting from the insurer's tortious breach of the duty to defend.

The present case is similar to *Pruyn*, upon which this Court relied in *Vernic I*. In *Pruyn*, the plaintiff filed suit against her homeowners' association, alleging that it negligently constructed and maintained the roads and drainage, which facilitated the water eroding the area around her home, resulting in a landslide and home damage. The plaintiff served the association's insurers with the complaint, but the insurers refused to provide a defense. The association entered into negotiations with the plaintiff and reached a settlement, assigning the insured's right to recover against the insurers in exchange for the plaintiff not executing judgment on the association. The assignment included a right of action based upon a breach of duty to defend and a breach of contract. The plaintiff filed to enforce the judgment. The insurers argued that the judgment could not be enforced against them as a matter of law, the trial court agreed, and the California Court of Appeals reversed on appeal.

The California Court of Appeals explained that if the litigation settled without trial and judgment, "the question whether the liability of the insured was one which the contract of insurance covered is still open, as is also the question as to the fact of liability and the extent thereof," and these questions can be litigated in a separate action for the purpose of recovering the amount paid in settlement. *Pruyn*, 42 Cal. Rptr. 2d at 312. The California Court of Appeals further stated that "an insured who has been abandoned by . . . [an] insurer and elects to settle rather than risk an adverse judgment **is entitled to an evidentiary presumption** in a subsequent action against the insurer to enforce policy provisions, as to the insured's liability on the underlying claim, and the amount of [] liability." *Id.* at

311-12 (emphasis added) (internal quotations omitted). Because of this, the California Court of Appeals concluded that the trial court in that case had erred in sustaining the demurrers to the plaintiff's complaint on the basis that the plaintiff could not recover as a matter of law because the allegations, if supported by evidence, "would be sufficient to raise a presumption that the settlement reflected the existence and amount of [the insured's] liability . . . ." *Id.* at 314.

It does not appear on the record that Vernic has asserted that Lincoln's failure to defend was the result of bad faith, but has asserted it was a breach of the duty to defend, resulting in a judgment against him that is a loss under the Policy. Although the Liquidator contends that Vernic asserted in the objections to the NOD that Lincoln's failure to defend was in bad faith and now asserts that he seeks only contractual damages, this is not supported by the record, as Vernic asserted in those objections that Lincoln "fail[ed] to investigate the claim" and "breached its duty to defend in this matter." (Objection to NOD ¶ 61.) Vernic's assertion that he is entitled to the judgment under the Policy because Lincoln breached its duty to defend is consistent with California case law, which provides that when "an insurer erroneously denies coverage and/or improperly refuses to defend the insured in violation of its contractual duties, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement . . . ." *Isaacson*, 750 P.2d at 308 (internal quotations omitted).

Like the insured in *Pruyn*, it appears Vernic negotiated a settlement to the best of his abilities after Lincoln refused to defend. Because the California judgment results from Lincoln's breach of the duty to defend, which creates a presumption as to liability, *Pruyn*, 42 Cal. Rptr. 2d at 311-12, and that liability

27

should have been covered under the Policy, Vernic's claim is one "under policies for losses wherever incurred," 40 P.S. § 221.44(b), and should be assigned priority (b) under the Act. The Policy expressly provided that Lincoln had "the right and duty to defend" Vernic. (Supplemental Reproduced Record at 24b.) Therefore, Vernic is entitled to the amount of the judgment against him, plus the amount of attorney's fees he has personally incurred as a result of Lincoln's breach of its duty to defend.

## III. CONCLUSION

Contrary to Vernic's assertions, the Liquidator has not waived its ability to challenge the priority level assigned to Vernic's claim. However, for the foregoing reasons, we agree with Vernic's argument that his claim should be assigned class (b) priority.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Franjo Vernic DBA SF Rehabitat,    :
                 Objector    :
                          :
                    v.           :     No. 4 LIN 2017
                          :
Lincoln General Insurance Company,  :
In Liquidation,               :
              Respondent   :
                          :
(Ancillary matter to In Re:  Lincoln   :
General Insurance Company In      :
Liquidation No. 1 LIN 2015)     :

# O R D E R

**NOW**, December 3, 2020, upon reconsideration of what priority level should be assigned to Franjo Vernic DBA SF Rehabitat's (Vernic) claim, the Notice of Determination shall reflect that Vernic's claim is assigned to class (b) priority.

 

                               _____

                               **RENÉE COHN JUBELIRER,** Judge